## MORRIS v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. December 13, 1906. Rehearing Denied January 22, 1907.

### No. 1,549.

1. CRIMINAL LAW—TRIAL—RIGHT TO BE CONFRONTED BY WITNESSES.

The accused, in a criminal case in the federal courts, has a right to be confronted by the witnesses, and through and by his counsel given an opportunity to be informed and advised of all the evidence that is submitted against him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 1538.]

2. WITNESSES—EXAMINATION—MEMORANDA—REFRESHING MEMORY.

It was error, in a criminal case, to permit the district attorney to show certain documents, after they had been identified, to witnesses, for the purpose of refreshing their memory, without first submitting them to defendant's attorney, on his demand for an inspection.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, § 891.]

In Error to the District Court of the United States for the Northern District of Texas.

W. L. Crawford, for plaintiff in error.
Wm. H. Atwell, U. S. Atty.

Argued before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. The plaintiff in error, O. M. Morris, prosecutes this writ for the reversal of a verdict and judgment rendered against him upon an indictment charging him with carrying on the business of a retail liquor dealer without first having paid the special tax required by law. The errors assigned, some 18 in number, are based upon the rulings of the court on motions to quash demurrers to the indictment, in regard to the admission of evidence, and on refusals to give certain special instructions to the jury as requested.

It is not necessary to pass upon all the assignments, because the conclusion we have reached in regard to the third and eleventh requires a reversal of the judgment below, and on a new trial the rulings herein assigned as error may not be again made. The third and eleventh assignments of error are based upon the following proceedings, shown in the bill of exceptions: One W. R. McCafferty, sworn for the government, having testified as to his residence, business, previous employment by the plaintiff in error, and some other matters, was examined as follows:

"Mr. Atwell: Did you ever see Morris, while you were working there, go into that back room and bring anything out with him?
"Col. Crawford: We object.
"The Court: I will permit the question.
"Col. Crawford: We except.
"A. I can't say that I ever saw him bring anything out of the room that I remember of.

"Mr. Atwell: I don't like— I think you are honest about it. You made an affidavit; been before the grand jury, and made an affidavit before the collector— Collector Hunt?

"Col. Crawford: We ask that that be withdrawn from the jury.

"Witness: I can't say that it was alcohol. Yes; I have seen him bring—

"Col. Crawford: We ask the court to withdraw that, or give us an opportunity to inspect it. If it is for impeachment, the government cannot impeach its own witness without satisfying the court that the witness is corrupt, or that the government is surprised by the testimony. We have a right to inspect a former affidavit or deposition before that is resorted to, as we understand the rule.

"Mr. Atwell: I have a right to show it to him to refresh his memory, and that is all I have done.

"Col. Crawford: We object, and state the rule to be that the defendant has the right, before papers are put in the hands of the witness, to inspect the paper for the purpose of making objections to the use of the papers for the proposed purpose, or for any other purpose, and, further, for the purpose of preparing himself, by the inspection in advance of the examination, for a cross-examination of the said witness upon the said papers. No memorandum, affidavit, or deposition ought to be permitted to be used for the purpose of refreshing the memory of a witness, unless it appear that the present recollection of the witness of the past event has failed, unless it appears that the memorandum, affidavit, or deposition proposed to be used by the party calling the witness was made contemporaneous with the event to which it relates.

"But the court overruled these objections, and refused to permit the defendant to inspect the paper offered and put in the hands of the witness by the district attorney, and permitted the witness to read the paper and return it to the district attorney; and thereupon the examination proceeded as follows, the district attorney holding the paper in his hand, to all of which the defendant excepted.

"Explanation by the Court: With reference to the bill of exceptions as above reserved, the paper which the district attorney handed the witness was first handed by the district attorney to the court, and the paper was in fact what purported to be a written statement and an affidavit thereto, made and signed by the witness, McCafferty, before Deputy Collector of Internal Revenue Hunt. This paper, of course, was not read or submitted to the jury in any way.

"Further explanation by the Court: The written statement handed the witness for the purpose of refreshing his memory, and purporting to be his statement and signed by him, purported to be of date August 28, 1905.

"Further: The explanation hereinabove made, and called 'Explanation,' was made on March 10, 1906, and within the term at which the case was tried, and after notice to attorney for the defendant. The defendant, through his attorney, excepts to the making of such further explanation, on the ground the defendant's attorney did not at the trial have an opportunity to inspect the said paper, and because, further, the United States District Court of Texas for the Northern District of Texas has not now jurisdiction of this case, and because on the trial there was no proof offered of the date of the execution of the paper."

The bill of exceptions further shows that one Hollingsworth, a witness sworn for the government, having been examined and cross-examined, was then re-examined, and during such re-examination the following occurred:

"Atwell: Q. Mr. Hollingsworth, you stated, in answer to a question, that you knew it was there because you heard two employés of Morris talking about it, did you? You understood that question when you answered? A. I think so. Q. That is, you knew the alcohol was there because you heard Turner and McDonald say it was there; is that the idea? (Witness hesitates.)

"The Court: Answer the question.

"A. Yes.

"Mr. Atwell: If you knew it was there, and had their consent to get it, why didn't you get it the first time you went in, without asking Morris? A. I didn't know it was there until I saw the bottle.

"(District attorney hands witness paper.)

"Col. Crawford: I object. It is manifestly— It is not a memorandum made by the witness. It is not made in respect to any transaction—not contemporaneous with any transaction. It is not written by him, as far as we know and believe. It is not such an affidavit as to refresh one's memory. We are entitled to the independent recollection of the witness."

After presentation of authorities, the court said:

"The Court: I will permit the witness to be handed the affidavit.

"Col. Crawford: We save an exception.

"The Court: Can you read that affidavit?

'Witness: I can't read it without my specks.

"(Procures glasses and reads affidavit.)

"Witness: It don't seem like the one I signed.

"Mr. Atwell: Is not that your signature there? A. I don't know. I would not say. That is not what I aimed to tell him, and it is not what I said to the court. Q. You say that is not your affidavit? A. I don't know. I think this is my signature.

"(Witness is given another affidavit and reads it.)

"Witness: That is all right.

"Mr. Atwell: Now; Mr. Hollingsworth, when you approached Mr. Morris in his store—about the middle of his store—and asked him to sell you alcohol, he told you he would not do it?

"Col. Crawford: We object. We object to his using this paper, without submitting it to us and giving us an opportunity to know what it is or where it came from.

"The Court: You can save your exception.

"Col. Crawford: We take an exception.

"Explanation by the Court: The paper shown to the witness Hollingsworth was first handed to the court by the district attorney for the court's inspection, and the paper was in fact what purported to be a written statement, made by the witness and signed by him, and sworn to by him before a justice of the peace of the state of Texas. This paper was not, of course, read to the jury or submitted to it in any way.

"Further Explanation by the Court: The paper handed the witness, and purporting to be an affidavit made by him covering the transaction about which he testified, purported on its face to be made on June 3, 1905, or about four days after the transaction.

"The above explanation, called 'Further Explanation,' was made this 10th day of March, 1906, and during the term. of court at which the case was tried, and after the notice to the defendant's attorney. The defendant, through his attorney, excepts to the making of the 'further explanation' by the court, for the reason defendant's attorney was not permitted to inspect the memorandum, and because at this time the court has not jurisdiction of the case, and because at the trial there was no proof offered as to the date of the instrument."

It thus appears that during the trial, and over the objection of the defendant, McCafferty, a government witness, was permitted to read and refresh his recollection with a paper purporting to be a written statement and an affidavit thereto, made and signed by the witness; that an examination and inspection of the said paper was then and there refused to the defendant and his counsel; and that the district attorney proceeded with the examination of the witness, holding the paper in his hand. And it also appears that, over the objection of the defendant, the court permitted the government's witness, Hollingsworth, to read and refresh his recollection with a paper which purported to be a written statement, made by the witness and signed by

him, and sworn to by him before a justice of the peace of the state of Texas, and at the same time refused the defendant and his counsel the right to inspect and examine the said paper.

It is contended that these rulings were correct, and certainly not prejudicial to plaintiff in error, because, first, the said papers were not, of course, read to the jury or submitted to it in any way; and, second, after the witnesses had been examined by the government, the counsel for the defendant, if he had desired to obtain an inspection of the papers for the purpose of cross-examination, could have applied to the court and it would have been granted to him. Not having seen the papers in question, and having only the description of them in the bills of exception, we are unable to say whether it would not have been better for the plaintiff in error, if the papers themselves had been read to the jury, rather than to have had the contents given by an ex parte statement of what they contained; and it is extremely probable that, if the papers had been read to the jury, the counsel for the defendant would have had some information as to the contents thereof, and then, perhaps, a different question, if any at all, would have been presented here. It may be that an inspection of the papers in question would have been given, if asked for, after the district attorney had finished his examination; but then the mischief had been done, and we can hardly criticise the learned counsel for not asking for the papers later, in view of the refusals which had been previously given. Besides, it does not appear that any such suggestion was given to the counsel at the time the rulings were made against him.

The accused in a criminal case in the courts of the United States has a right to be confronted by the witnesses against him, and through and by his counsel given an opportunity to be informed and advised of all the evidence that is submitted against him. To permit the district attorney to furnish a paper to a witness, and allow the witness to testify from and by that paper, without having previously exhibited it to the defendant on his demand, is practically to deny him the right of being confronted with the witnesses against him, and tends to deprive him of full opportunities to defend himself. We understand it to be the universal rule of evidence in the courts of this country that, where a witness is permitted to examine and refresh his recollection with a paper, it is to be tendered to the other side for inspection just as soon as it has been identified. This rule is found in all the text-books, and, if numerous adjudged cases declaring it are not found on all hands, it is because of the absence of nisi prius reports, and because so few trial courts have ever denied the right in question. Of the few at hand, we cite Peck v. Lake, 3 Lans. (N. Y.) 136; McKivitt v. Cone, 30 Iowa, 455; Bashford v. People, 24 Mich. 244; Duncan v. Seeley, 34 Mich. 369; Tibbetts v. Sternberg, 66 Barb. (N. Y.) 201; Chute v. State, 19 Minn. 271, (Gil. 230).

In Duncan v. Seeley, supra, Judge Cooley stated the case and held as follows:

"On the trial the plaintiff, being on the stand, was questioned by his counsel as to the time when he was at the place of the alleged sale after the sale was made; it being deemed important to show that he was there on a certain day. Plaintiff, in reply, stated that he could not state positively

without looking at something to refresh his memory; and, after professing to look, he stated, further, that what he had looked at did refresh his memory. He was then called upon by defendant's counsel to produce the memorandum at which he had looked; but the counsel for plaintiff objected, and the court sustained the objection. We think this was erroneous. The witness was in effect testifying, not from recollection, but from something which he professed to have in writing; and the other party had a right to know what the memorandum was on which he relied, and whether it had any legitimate tendency to bring the fact in controversy to mind. It would be a dangerous doctrine which would permit a witness to testify from secret memoranda in the way which was permitted here. The error was not cured in this case by the plaintiff offering on the next day, on the conclusion of his testimony, to produce the memorandum. The defendant was entitled to see it at the time, in order to test the candor and integrity of the witness; and the opportunity for such a test might be lost by a delay which an unscrupulous witness might improve by preparing to procure something to exhibit."

The rule should be more rigorously adhered to in criminal than in civil cases.

The judgment of the District Court is reversed, and the cause is remanded, with instructions to grant a new trial.