AUSTIN SUMMERLIN v. STATE OF INDIANA.

[No. 1070S257. Filed July 19, 1971.]

*Henry A. Pictor,* Rising Sun, for appellant.

*Theodore L. Sendak,* Attorney General, *David H. Kreider,* Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal by Austin Summerlin, appellant, who was charged by affidavit with assault with intent to kill, pursuant to IC 1971, 35-13-2-1 (Ind. Ann. Stat. § 10-401a [1970 Supp.]). Upon pleas of not guilty and not guilty by reason of insanity at the time of the alleged offense, trial was had before a jury and appellant was convicted of assault and battery with intent to kill. Following conviction, appellant was sentenced to the Indiana State Prison for a period of two (2) to fourteen (14) years.

Appellant presents five issues for review. First, he asserts an unreasonable limitation of character witnesses. Before the defense introduced any witnesses other than the accused, the trial court limited the number of character witnesses to be called by the defense to five. Appellant claims character was of great importance to the issue of premeditated malice, and that the limitation to only five (5) character witnesses, when he was prepared to call ten, was an abuse of discretion. We cannot agree.

"It has long been the law in this State that the number of witnesses who may be called to prove a single issue of fact is within the sound discretion of the trial court and, while such discretion may be reviewed, the exclusion of such evidence will not constitute reversible error unless a clear abuse of discretion is shown. *Chappel* v. *State* (1926), 197 Ind. 272, 276, 150 N. E. 769; *Butler* v. *The State* (1884), 97 Ind. 378. See also: 21 ALR Ann. 1(a), p. 335; 48 ALR Anno. 1(a), p. 948.

Professor Wigmore in § 1908, p. 580, Vol. 6, 3d ed., Wigmore on Evidence, states the rule as follows:

"The value of character-evidence, impeaching or sustaining a party or a witness, is commonly much exaggerated (ante, §§ 920, 1611). Its comparative futility in the ordinary case, and its tendency to degenerate into a mere exhibition of petty local jealousies and animosities, of no real probative service, have induced the Courts to concede unanimously that the number of character-witnesses may without disadvantage be limited, as the trial court may prescribe." *Dobbs* v. *State* (1957), 237 Ind. 119, 121-122, 143 N. E. 2d 99, 101-101.

Appellant does not deny that limitation lies within the discretion of the trial court. In the instant case, appellant knew beforehand the number of character witnesses he was to be allowed, and there was only one witness in rebuttal. The trial court can, and in many cases should, at its discretion, limit the number of character witnesses to be presented. A parade of character witnesses on either side might divert the jury from the main issues of the case and allow the trial to result in a trial of character instead of a trial on the facts. Even admitting, arguendo, that, as appellant alleges, premeditated malice is a material issue, there is no showing that the limitation in this case prejudiced appellant in any way. Any further presentation of witnesses appears cumulative. It is the content and quality of testimony which is important, not the number of witnesses. The trial court did not abuse its discretion in so limiting the number of character witnesses.

Appellant asks that we establish guidelines in this area, but such an undertaking is not practical. The circumstances of

each case may vary extensively. The importance of character will depend on the particular circumstances of each case. The trial court is in the best position to decide this issue, and the defendant is protected from abuse by the right of review. It would be unwise to handcuff the trial court with some rigid rule or formula.

Appellant next claims error in the trial court's refusal to allow defense counsel to inspect the notes and records of a state witness, Doctor Fong, which the witness used to refresh his memory, while on the stand.

"While there is some authority to the contrary, it is also the well-settled rule that the opposing party or counsel has the right, on proper demand, to inspect and use for purposes of cross-examination any paper or memorandum which is used by a witness while on the stand for the purpose of refreshing his memory upon the matters as to which he is testifying, and which in fact does tend to refresh his memory." 125 A.L.R. 194, 195.

Professor Wigmore agrees with the majority rule:

"On a general principle, that has in view the risk of imposition and false aids, against which the opponent is entitled to the means of protection, the writing must be *shown to him on request*. Furthermore, as by his opportunity of *inspection* the opponent is guarded against imposition clearly apparent, so by *cross-examination* based on the paper he may further detect circumstances not appearing on the surface, and may expose all that detracts from the weight of the testimony." Wigmore on Evidence, § 762, p. 108, Vol. III, 3d ed.

The basis for the trial court's refusal was that these were the confidential notes of the doctor. It is the well established rule, and we need not cite any authority, that the doctor-patient privilege belongs to the patient only which he may waive. Also, the privilege extends only to those things of a confidential nature. *Baker* v. *Whitaker* (1962), 133 Ind. App. 347, 182 N. E. 2d 442. The right of the doctor-patient privilege was not recognized at common law but is statutory. *Collins* v. *Bair* (1971), 256 Ind. 233, 268 N. E. 2d

95; *Stayner* v. *Nye* (1949), 227 Ind. 231, 85 N. E. 2d 496; *Myers* v. *State* (1922), 192 Ind. 592, 137 N. E. 547; IC 1971, 34-1-14-5 (Ind. Ann. Stat. § 2-1714 [1968 Repl.]). The purpose of such privilege is to encourage free and open communication between doctor and patient in order to attain the necessary information for adequate treatment. The purpose of the privilege is not the suppression of truth. *Collins* v. *Bair, supra; The Penn Mutual Life Insurance Co.* v. *Wiler* (1884), 100 Ind. 92. IC 1971, 35-5-2-2 (Ind. Ann. Stat. § 9-1702 [1956 Repl.]) reads in part:

". . . When an insanity defense is pleaded, the court shall appoint two [2], or three [3], competent disinterested physicians to examine the defendant, and to testify at trial . . .".

See also *Brattain* v. *State* (1945), 223 Ind. 489, 61 N. E. 2d 462; and *Noelke* v. *State* (1938), 214 Ind. 427, 15 N. E. 2d 950. The statute indicates that defendant makes his mental condition a justiciable issue in a criminal proceeding and thus waives any privilege concerning his mental condition. See *Collins* v. *Bair, supra,* and *Brattain* v. *State, supra.* Although Doctor Fong was a state witness and not one of the court appointed psychiatrists, his examination was in conjunction with the court appointed examination. That no privilege is contemplated in this situation is self-evident. Since there is no choice or privilege afforded defendant, justice requires he be given the fullest opportunity to cross-examine.

This reasoning logically extends to notes and records referred to on the stand. Such memoranda should be available for investigation upon request in order to provide defendant the full opportunity to defend himself and confront the witnesses against him. See *Morris* v. *United States* (5th Cir. 1906), 149 F. 123. In *Falcone* v. *New Jersey Bell Telephone* (1967), 98 N. J. Super. 138, 236 A. 2d 394, appeal denied, 51 N. J. 190, 238 A. 2d 475, the trial court's refusal to permit plaintiff's counsel to examine certain records or notes of defendant's expert medical witness, which had been used to refresh his recollection while testifying, was held to be

erroneous. If the memoranda used in the instant case were considered privileged or confidential as "work product", this privilege or confidentiality was waived when they were used on the stand. Therefore, since the mental examination was ordered by the court, the examination was not for treatment, and the memoranda were not otherwise privileged or confidential, it was error to deny defense counsel the opportunity to examine the notes and records used by Doctor Fong to refresh his memory while on the stand.

However, it does not appear that appellant was prejudiced by the error, and therefore the cause cannot be reversed upon this issue. In order to be reversible, the error must prejudice the substantial rights of the defendant. If the rejection of the request does not so prejudice the defendant, the error is harmless. *Micks* v. *State* (1967), 249 Ind. 278, 230 N. E. 2d 298; *Farley* v. *State* (1962), 243 Ind. 445, 185 N. E. 2d 414; *Stice* v. *State* (1950), 228 Ind. 144, 89 N. E. 2d 915; *Henry* v. *State* (1925), 196 Ind. 14, 146 N. E. 822. In *Leach* v. *State* (1912), 177 Ind. 234, 238, 97 N. E. 792, 794, this Court was faced with a situation similar to the one in the instant case:

"It is claimed by appellant that the court, over objection of appellant, permitted one Meagher, a witness for the State, to refresh her memory from a memorandum, without a proper showing that it was one which the law permitted to be used for that purpose, and also that the court refused to require said witness to deliver said memorandum to counsel for appellant for examination when she was testifying as a witness. Complaint is made by appellant of the rulings of the Court, and they are urged as grounds for reversal . . .

Assuming that said rulings were made as claimed, and conceding without deciding, that they were erroneous, they furnish no grounds for reversal, for the reason that, if the part of the testimony of said witness which depended on said memorandum were eliminated, the verdict of the jury is clearly and fully sustained by the remaining testimony of said witness and other evidence, . . ."

Thus, if, after excluding the testimony of the witness dependent on the memoranda, the verdict could be sustained by the

remaining testimony of this witness, other expert testimony, and the entire body of the evidence, the error is not prejudicial. It is admitted by appellant that Doctor Fong used the notes only sparingly to refresh his memory. Defense counsel might have been able to impeach Doctor Fong's credibility in some way if inspection had been allowed, and the error might have been prejudicial had he been the only witness on the subject; however, two other court appointed expert witnesses testified concerning appellant's competency at the time of the assault. One of the experts, Doctor Geeraerts, testified,

> ". . . even though Mister Summerlin may have been temporarily overwhelmed by his emotional condition he understood the nature and quality of his acts and his consequences and therefore I felt he was at least partially accountable for his acts, even though I did not consider him psychotic at the time."

The testimony of Doctor Geeraerts is not as conclusive as that of the other expert, Doctor Morrison, who said flatly that appellant was sane at the time. Add to this the allowable testimony of Doctor Fong, even if partially impeached, that appellant was sane at the time, and the consensus of all the expert testimony closely approaches unanimity. Further the jury *is not* and *should not* be totally dependent on expert testimony in order to decide the issue of insanity. *Hill* v. *State* (1969), 252 Ind. 601, 251 N. E. 2d 429. Appellant was allowed to testify extensively and in narrative form as to his state of mind prior to and during the assault. There was an array of other witnesses whose testimony also could have had some influence on the jury. Part of the opinion evidence of one expert was but a small portion of the whole from which the jury could draw in deciding the issue of insanity.

Appellant claims the error was prejudicial in that Doctor Fong, on direct examination, stated that Austin Summerlin told him that, after the assault, he forced his wife at gunpoint to have sexual relations with him. Doctor Fong later retracted his statement and said he learned this from a social worker's

report contained in his files. However, upon the request of defense counsel, the trial court instructed the jury to disregard that part of the testimony pertaining to the forcing of his wife to have sexual relations at gunpoint. In addition, the wife later testified herself on this matter as did appellant. Both said that, although appellant had the revolver in his hand, he did not force her to commit the act at gunpoint. Appellant clearly was not prejudiced by this portion of Doctor Fong's testimony.

Although the denial of inspection of the memoranda was improper, we cannot say that it was, in and of itself, so prejudicial such as to require reversal.

Appellant's third contention concerns one of the trial court's instructions on insanity. The instruction given was as follows:

"A person is not responsible for criminal conduct if at the time of such conduct as a result of a mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law. The terms 'mental disease or defect' do not include an abnormality manifested merely by repeated criminal or otherwise anti-social conduct."

Appellant requested the following be added to this instruction:

"A mental disease or defect includes any abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs behavior control."

The whole area of instructions on insanity was thoroughly discussed by this court previously in *Hill* v. *State, supra.* There we gave our complete endorsement to the American Law Institute's alternative definition of insanity. It is word for word the instruction given by the trial court. The addition requested by appellant is also approved of in *Hill* v. *State, supra.* However, the instruction *given incorporates the meaning of the requested language.* The basic thrust of the requested addition is that the behavior will be *substantially* impaired. The wording of the instruction given is ". . . as a result of mental

disease or defect he lacks *substantial capacity* . . . to conform
. . ." Part of the *reason for accepting* the ALI definition in
the *Hill* case was that it did include within its meaning those
very ideas contained in the requested addition. Thus, to have
given the additional language asked for by appellant would
have, in reality, added nothing. It would not have been error
to include the addition, but, on the other hand, neither was it
error to exclude it. Clearly appellant's rights were in no way
prejudiced by the trial court's refusal to add the requested
language to its instruction.

On appeal, appellant claims the instructions on insanity, as
a whole, were confusing. However, appellant made no specific
objections to these instructions when the trial court indicated
they were the ones to be given. CR. 8, which superseded Su-
preme Court Rules 1-7 and 1-7a, reads in part as follows:

"(B) The court shall indicate on all instructions, in advance
of the argument, those that are to be given and those re-
fused. After the court has indicated the instructions
to be given, each party shall have a reasonable oppor-
tunity to examine such instructions and to state his
*specific objections to each,* out of the presence of the jury
and before argument, or *specific written objections to each
instruction* may be submitted to the court before argument.
*No error with respect to the giving of instructions shall be
available as a cause for new trial on appeal, except upon the
specific objections* made as above required.
. . .

(H) The manner of objection to such instructions, of sav-
ing questions thereon, and making the same part of the rec-
ord shall be the same as in Rule 1-7 of this court." (our
emphasis)

This has long been the rule in Indiana, the purpose being to
indicate specific errors in the trial court's instructions so that
the court may have an opportunity to make any necessary cor-
rections in order to avoid a new trial. *Warren* v. *State* (1963),
243 Ind. 508, 188 N. E. 2d 108; *Murray* v. *State* (1866), 26
Ind. 141, *Ledley* v. *State* (1853), 4 Ind. 580. For this reason
an appellant cannot enlarge his objections to instructions on

appeal. *Liford* v. *State* (1965), 247 Ind. 149, 210 N. E. 2d 366, reh. den. (1966), 247 Ind. 149, 213 N. E. 2d 704. Since, appellant failed to object specifically to any other instruction and did not, at the time of trial specifically raise the matter of ambiguous instructions, he cannot first object on appeal.

Appellant's fourth ground for asserting error contends that the State failed to prove premeditated malice. IC 1971, 35-13-2-1 (Ind. Ann. Stat. § 10-401a [1970 Supp.]) sets forth the elements of assault with intent to kill:

> "Whoever with intent to˜kill another human being perpetrates an assault or assault and battery upon the ▇ other human being, shall upon conviction, be imprisoned . . . not less than two (2) nor more than fourteen (14) years."

Thus, the elements are merely an assault or assault and battery joined with the intent to kill. "Premeditated malice" is not contained in the elements. Appellant claims "premeditated malice" must be proved because the words were used in the affidavit to charge the appellant. We cannot agree with this argument. IC 1971, 35-1-23-9 (Ind. Ann. Stat. § 9-1105 [1956 Repl.]) reads:

> "Words used in the statute to define a public offense need not be strictly pursued, but other words conveying the same meaning may be used."

IC 1971, 35-1-23-26 (Ind. Ann. Stat. § 9-1127 [1956 Repl.]) reads in part:

> "No indictment or affidavit shall be deemed invalid, nor shall the same be set aside or quashed, nor shall the trial, judgment or other proceeding, be stayed, arrested or in any manner affected for any of the following defects:
> . . .
> Sixth. For any surplusage or repugnant allegation, when there is sufficient matter alleged to indicate the crime and person charged."
> "The general rule of Indiana criminal procedure is that 'what is unnecessary to allege is automatically unnecessary to prove'; *Marks* v. *State* (1942), 220 Ind. 9, 40 N. E. 2d

108." *Powell* v. *State* (1968), 250 Ind. 663, 668, 237 N. E. 2d 95, 98.

Upon this basis, since premeditation is not an element of the offense of assault or assault and battery with intent to kill it need not be proven. In *Sloan* v. *State* (1873), 42 Ind. 570, defendant was charged by indictment that he "feloniously, purposely, and with premeditated malice," did "beat, strike, kick, stomp, trample upon, and wound, with intent . . . to kill and murder . . ." The indictment was considered sufficient to charge the crime of assault and battery.

> "It has been established in this state that the material allegations incident to the offense charged must be proved beyond a reasonable doubt; . . . Allegations not essential to ▮ such purpose, which can be entirely omitted without affecting the sufficiency of the charge against the defendant, are considered as mere surplusage and may be disregarded." *Powell* v. *State, supra,* 250 Ind. at 667, 237 N. E. 2d at 97.

Appellant made no motion to quash the affidavit, and at no time made any reference to premeditation in any objection or motion for a directed verdict. In fact, appellant apparently recognized that premeditation was not an element of the crime charged. His second motion to correct errors, which pertained to this subject, was as follows:

> "Motion is made for judgment in favor of defendant because the verdict is not supported by sufficient evidence of the necessary element of the offense, malice . . ."

Nowhere in appellant's motions to correct errors is the word premeditation mentioned or discussed.

The element of intent may be inferred when a deadly weapon is used in a manner reasonably calculated to cause death. *Jones* v. *State* (1970), 254 Ind. 499, 255 N. E. 2d 105; ▮ *Liston* v. *State* (1969), 252 Ind. 502, 250 N. E. 2d 739; *Petillo* v. *State* (1950), 228 Ind. 97, 89 N. E. 2d 623. Appellant himself testified he went to the victim's house with two revolvers, broke in the door, and shot him with a revolver.

The victim also testified to the same facts, as did the victim's wife and the appellant's wife who were present in the house. Use of a deadly weapon can also be the basis for the inference of malice. *Brown* v. *State* (1969), 252 Ind. 161, 247 N. E. 2d 76. However, we deem the word "malice" surplusage as well as the word "premeditated" since it is not an element of the crime within the statutory definition and the affidavit was sufficient if the word was excluded. Appellant was adequately apprised of the charge against him and the words *"premeditated malice"* in the affidavit *were* merely *surplusage* which in no way prejudiced appellant's rights.

Appellant's fifth allegation of error claims appellant was detained in Dearborn County jail for a period longer than six months in violation of CR. 4(A). A timely motion for discharge was filed. The facts are as follows. Appellant was arrested and charges were filed June 10, 1969. Trial was scheduled for October 27, 1969, four and one-half months later. October 6, 1969, appellant wrote to his attorney indicating he wished to dismiss him. On October 23, 1969, four days before trial was scheduled to begin, the attorney informed the court he was withdrawing at the request of appellant. A new attorney was appointed by the court on November 12, 1969. Trial commenced on February 25, 1970, four months after appellant's first attorney withdrew. CR. 4(A) states that a defendant cannot be detained for longer than six months, "except where a continuance was had on his motion, or the delay was caused by his act, . . ." Appellant does not argue that the request of a new attorney was not such a delay but claims that only a month's delay could be chargeable, and he was not brought to trial until four months later.

We feel the six months should begin anew on the date appellant's first attorney officially withdrew. This court held in *State* v. *Hawley* (1971), 256 Ind. 244, 268 N. E. 2d 80 that the six months began upon the defendant's request for a severance. In *State* v. *Grow* (1970), 255 Ind. 183, 186, 263 N. E. 277, 278, this court said:

"Where a change of venue from the county has been granted, we have held the time *begins to run anew* . . ." (our emphasis)

The court in the latter case was concerned with the one year rule where defendant was held by recognizance but both have the purpose of speedy trial, and are parts of the same ▮ rule. The rule is for the benefit of the defendant and any action which he initiates which would obstruct the speedy trial process should cause the time to start anew since it is then apparent that defendant no longer wishes to avail himself of the benefit. It would be ludicrous to say that in each different type of defendant initiated delay there is to be a different amount of time which is chargeable. CR. 4(A) is *self-executing* until there is a delay initiated by the defendant. Unless such delay is initiated, defendant is eligible for discharge at the end of the six month period subject to the "spirit of the rule" exception made previously by this court in *Harris* v. *State* (1971), 256 Ind. 464, 269 N. E. 2d 537. After a delay, the defendant can still avail himself of the fifty judicial day rule, CR. 4(B), and get his speedy trial. If he causes the self-executing CR. 4(A) to stop, it seems only logical that he then must initiate action on his own to prevent a new six month period from beginning. Such a remedy is available under CR. 4(B) so, clearly, no rights are denied. The latter rule is not self-executing and must be initiated by the defendant if he *really desires* a speedy trial. In the instant case, there was no request made pursuant to CR. 4(B). Although, the trial court's disposition on the motion for discharge it is not clear from the record, it is immaterial since appellant was brought to trial four months after the withdrawal of his first attorney.

For all the foregoing reasons, the verdict of the trial court is affirmed.

Judgment affirmed.

Arterburn, C.J., DeBruler, Givan and Prentice, JJ., concur.

NOTE.—Reported in 271 N. E. 2d 411.