PERRY DEWAYNE LOCKRIDGE *v.* STATE OF INDIANA.

[No. 275S38. Filed December 8, 1975.]

*Harry L. Zerbe,* of Lawrenceburg, *Charles A. Thompson,* of Columbus, Ohio and *Bobby Jay Small,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Arthur Thaddeus Perry,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellant, Perry DeWayne Lockridge, stands convicted of the first degree murder of his brother, William Lockridge. Evidence at trial revealed that the two brothers lived with their father in Lawrenceburg, Indiana. On the evening of November 13, 1972, the two brothers argued over a stereo speaker. Following this argument, the Appellant

went to another room of the family home and obtained a shotgun. He returned upstairs, shot and killed his brother.

The Appellant was arrested shortly after the killing. On November 14, 1972, Judge Lester G. Baker of the Circuit Court of Dearborn County determined that jurisdiction over the Appellant should be acquired by the Juvenile Court and authorized the county probation officer to so petition the Juvenile Court. The Appellant was then fifteen years old. That same day the probation officer petitioned the Juvenile Court to take jurisdiction. The prosecutor of the Seventh Judicial Circuit petitioned the Juvenile Court to waive jurisdiction and transfer the Appellant to regular criminal court.

Pauper counsel was appointed for the Appellant by the Juvenile Court on November 17, 1972. On that same day an insanity plea was filed on behalf of the Appellant by his attorney. A hearing on waiver of jurisdiction by the Juvenile Court was held on November 17, 1972, with the court withholding its ruling on the petition to waive jurisdiction until the Appellant could be psychologically evaluated. Following examination of the Appellant by court-appointed and defense psychiatrists, a hearing on the sanity of the Appellant was held March 20, 1973.

On April 3, 1973, the Appellant filed a Motion for Civil Commitment. On April 16, 1973, this motion was denied and the Appellant was ordered transferred to regular adult criminal court. An indictment against the Appellant for first degree murder was issued on April 24, 1973. On June 1, 1973, a defense Motion for Continuance was granted. On November 6, 1973, the trial court heard evidence on the Appellant's competency to stand trial. The Appellant was found not competent to cooperate with counsel and stand trial. He was committed to Beatty Memorial Hospital until February 5, 1974. On that date, the court found the Appellant competent to stand trial and ordered him returned to Dearborn County.

Trial was commenced on June 11, 1974. The jury returned its verdict of guilty on June 21, 1974. A Motion to Correct

Errors was filed on August 29, 1974. From the denial of that motion on November 21, 1974, the Appellant now presents this appeal.

## I.

The Appellant's first contention of error is that the trial court in which he was convicted was without jurisdiction over him because of an invalid waiver of jurisdiction by the juvenile court. In this case the validity of this waiver of jurisdiction is not important. In a sense, the Juvenile Court could not invalidly waive that which it did not have.

Ind. Code § 33-12-2-3 (Burns 1975) provides that a juvenile court shall have exclusive original jurisdiction, absent waiver, in all cases in which a child is alleged to be delinquent, dependent, or neglected. The term "Delinquent Child" was defined at the time of trial to mean, among other things, a child under eighteen years of age who "commits an act which, if committed by an adult, would be a crime not punishable by death or life imprisonment." Ind. Code § 31-5-7-4 (Burns 1973).

This court has interpreted "punishable by death or life imprisonment" to "apply to crimes *for which the death penalty is possible.*" *Cummings* v. *State,* (1969) 252 Ind. 701 at 706, 251 N.E.2d 663 at 666-667. The statutory scheme at the time of the Appellant's trial thus removed from the juvenile system individuals under eighteen years of age charged with a crime carrying by statute a possible death sentence. This definition of jurisdiction remained valid regardless of whether or not that penalty could constitutionally be carried out. *Martin* v. *State,* (1974) 262 Ind. 232, 314 N.E.2d 60. Such was the case with the Appellant's charge of first degree murder. Under such circumstances jurisdiction is not placed in the juvenile court in the first instance, but in regular criminal court.

"[A] prosecutor cannot seek, nor the grand jury return, an indictment, nor may the prosecutor file an affidavit in a

court of criminal jurisdiction against any person known to be under eighteen years of age unless the case is within the statutory exceptions." *State ex rel. Atkins* v. *Juvenile Court of Marion County,* (1969) 252 Ind. 237 at 242-243, 247 N.E.2d 53 at 56. This case falls within the statutory exceptions and the trial court thus validly acquired jurisdiction through the Appellant's indictment for first degree murder. The Juvenile Court could have no jurisdiction upon the return of the indictment against the Appellant.

## II.

The Appellant's second allegation of error concerns the admission into evidence of statements made by the Appellant to police officers and the prosecuting attorney. It is contended that these statements were made without full compliance with the advisement requirements of *Miranda* v. *Arizona* as applied to juveniles in *Lewis* v. *State,* (1972) 259 Ind. 431, 288 N.E.2d 138. The *Lewis* decision provides that a juvenile's statement or confession cannot be used against him at trial unless he and his parent or guardian were informed of the rights being waived and unless the juvenile was given an opportunity to confer with his parent, guardian, or attorney regarding that waiver.

Before addressing the merits of this issue, we must confront the fact that the Appellant did not object at trial to the admission of this evidence. We do not consider this issue waived because the Appellant presented to the court prior to trial a motion *in limine* which, in part, asked that the Appellant's pre-trial statements be excluded. This part of the Appellant's motion was overruled. Objection at trial would have been desirable, but the issue was so thoroughly argued and the Court's ruling was so specific that further objection may be considered fruitless. The issue was included in Appellant's Motion to Correct Errors and we find it preserved for appeal.

We find, however, that the Appellant's contention is without merit. The statements by the Appellant to police officers were made shortly after his arrest, while he was being driven from the scene of the crime in a police car. As related by one of the patrolmen at trial, the Appellant's statements were as follows:

"A. * * * We didn't really question him but Deputy Ashley asked him why he had done it. I don't recall his answer. One time he said—'Only an animal would do something like this.'

* * *

Q. What else did he say?

A. He said—'I will get the electric chair for this' and I remember trying to quiet him down at that time and I said—'We haven't given anybody the electric chair since the early 1950's.' I wasn't sure but I made the statement to him. Then he said—'What will happen if I act insane' and we kind of left that unanswered.

Q. Was there anything else said between that time and the time you finally arrived at the Sheriff's office?

A. I don't believe so. We never said too much. * * *"

The Appellant had been read his *Miranda* warnings after his arrest, before making these statements. While there was not a parent or guardian present, we find neither this nor the presence of warnings controlling. Rather, we find that this exchange was not a custodial interrogation within the contemplation of *Miranda* v. *Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 and *Lewis* v. *State, supra.* These cases do not require the exclusion from evidence of volunteered statements such as those made here. Moreover, these comments were more than covered by other statements made the next day. These later statements were also admitted into evidence and rendered any error harmless.

The later statements were made at a true custodial interrogation of the Appellant conducted at the office of the prosecuting attorney. Present with the Appellant were the prosecutor, two policemen (one of whom was a friend of the

Appellant's family), the county probation officer, the Appellant's sister, and the Appellant's father. Before any questions were asked, the Appellant was again advised of his constitutional rights in the presence of all attending. The Appellant indicated that he understood those rights.

This procedure complied with the requirements of *Lewis* v. *State, supra.* The Appellant urges that he was provided with no true opportunity to confer with his father, but we can not agree. As a practical matter, repeated interruptions by police advising the Appellant to take such opportunity would have apparently had the same result since the record reveals that the Appellant's father volunteered answers himself during this questioning. More generally, this entire inquiry went far to avoid the oppressive inquisitorial procedure which *Miranda, Lewis* and similar cases have sought to prevent. Neither the United States Constitution nor the Constitution of the State of Indiana requires more of the State than was provided here.

### III.

The trial court refused to read to the Jury Defendant's Tendered Instruction No. 1:

> "You are instructed that a verdict of not guilty by reason of insanity means that the accused will be confined in a hospital for the mentally ill until the Department of Mental Health is satisfied and the Court is satisfied that the accused has recovered his sanity and will not in the reasonable future be dangerous to himself or others."

The Appellant contends that the trial court's refusal to give this instruction was reversible error because a jury should be instructed on the consequences of a verdict of not guilty by reason of insanity. It is urged that a jury should not be left with the impression that a person found not guilty by reason of insanity will simply walk from the courtroom a free man.

This court has found no error in the refusal to give such instructions absent particular circumstances which make them necessary. *Dipert* v. *State*, (1972) 259 Ind. 260, 286 N.E.2d 405; *Coppenhaver* v. *State*, (1902) 160 Ind. 540, 67 N.E. 453. The tendered instruction rejected by the trial court here is an inaccurate statement of the law. It implies that a defendant so acquitted will be automatically confined for an indeterminate period of time. This is not correct, as the trial court is required to hold a hearing on the competence of the defendant, after which the defendant may be discharged, confined and subjected to commitment proceedings, or discharged and subjected to commitment proceedings. Ind. Code § 35-5-3.2-1 (Burns 1975). The Appellant cannot predicate reversible error upon the refusal of the trial court to give an erroneous instruction.

Moreover, the trial court did read to the jury Court's Instruction No. 24:

"If the jury returns a verdict of not guilty by reason of insanity you are instructed that the law provides that the court shall initiate and conduct a mental competency hearing to determine whether the defendant shall be transferred to the care and custody of the Department of Mental Health for civil commitment proceedings."

This accurately, if not exhaustively, states the law. It also tells the jury that the defendant will not automatically go free if he is acquitted by reason of insanity. The underlying purpose of Defendant's Tendered Instruction No. 1 is therefore substantially carried out. We can find no error in the ruling of the trial court here.

## IV.

The Appellant also makes two other contentions regarding instructions. First, the Appellant contends that it was error for the trial court to read to the jury State's Tendered Instruction No. 11. That instruction reads:

"Not every mental aberation (sic) or disorder will excuse the commission of a crime. There is criminal responsibility where there is sufficient mentality to fully comprehend the nature and consequences of one's act coupled with the will power capable of controlling the acts."

The Appellant contrasts this with the definition of insanity adopted by this court in *Hill* v. *State,* (1969) 252 Ind. 601 at 614, 251 N.E.2d 429 at 436:

" 'A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to *appreciate* the wrongfulness of his conduct or to conform his conduct to the requirements of the law. . . .' American Law Institute, Model Penal Code (final draft) (1962)."

This court is reluctant to assume that a jury was misled or confused by the language of an instruction. *See Wilson* v. *State,* (1975) 263 Ind. 469, 333 N.E.2d 755. The instruction complained of here is essentially correct in its statement of the law, though the language differs from that spelled out in *Hill* v. *State, supra.* This difference in language is not so great that confusion on the part of the jury can be presumed. Moreover, State's Tendered Instruction No. 8, also given by the trial court, sets out correctly the *Hill* insanity test. All instructions given by a trial judge are to be considered together. *Cockrum* v. *State,* (1968) 250 Ind. 366, 234 N.E.2d 479. Under these circumstances, we can find no error in the trial court's reading of State's Tendered Instruction No. 11.

The Appellant also contends that the trial court committed reversible error by refusing to give Defendant's Tendered Instruction No. 5:

"You are instructed that there is no recognized rule in the State of Indiana known as the Durham Rule of Irresistible Impulse." (citation omitted)

The Appellant concedes that such an instruction is not required as a general rule, since to require instructions on what

is not the law would present a trial court with a virtually insurmountable task. It is contended, however, that confusion caused by the evidence required that this curative instruction be given.

The alleged confusion is contained in the testimony of a psychiatrist called as a state's witness. Attempting to attack the foundation of the doctor as an expert witness, counsel for the Appellant posed questions regarding the *Durham* rule. It was contended that the doctor's conclusions were based on that standard. The State points out that it was thus the Appellant himself who caused any confusion in the minds of the jurors. It is not the source of confusion, however, which is determinative of whether a curative instruction is required.

The record supports the trial court's rejection of this instruction. While the term "Durham Rule of Irresistible Impulse" was used in questioning the witness and in his resulting answers, the doctor stated that it was the American Law Institute test that he was applying. The jury was fully instructed at the close of trial on the test of insanity to be used.

## V.

Prior to trial, it was determined by the trial court that the Appellant was not competent to cooperate with his trial counsel. Pursuant to statute, the Appellant was committed to Beatty Memorial Hospital until further order of the trial court. Upon treatment and evaluation, the Appellant was later found competent to stand trial. The psychiatrist at Beatty Memorial Hospital whose primary function was to admit patients from State courts was Dr. August Dian.

Admitted into evidence at trial was testimony of Dr. Dian regarding the Appellant's mental condition at the time of the offense. The Appellant does not contend that the doctor could not testify as to the capacity of the Appellant to stand trial, but contends that testimony beyond that scope was

violative of the doctor-patient privilege provided under Ind. Code § 34-1-14-5 (Burns 1973).

In *Summerlin* v. *State*, (1971) 256 Ind. 652, 271 N.E.2d 411, this court confronted the problem of doctor-patient privilege as it related to physicians appointed to examine a defendant presenting an insanity defense. It was concluded by this court that "[t]he statute indicates that defendant makes his mental condition a justiciable issue in a criminal proceeding and thus waives any privilege concerning his mental condition." *Summerlin* v. *State, supra,* 256 Ind. at 658. While the witness-physician in that case had not been one of the court-appointed psychiatrists, his examination had been in conjunction with the court-appointed examination. It was our conclusion that no privilege was contemplated under such a situation.

It is argued by the Appellant that this waiver of doctor-patient privilege should extend only to those physicians appointed as a consequence of the plea of not guilty by reason of insanity. With this we can not agree. While the *Summerlin* case concerned psychiatrists appointed pursuant to Ind. Code § 35-5-2-2 (Burns 1975) this court did not predicate its holding upon that statute. Rather, we held that that statutory provision *recognized* waiver of the privilege as we had done in prior case law. It does not *limit* that waiver.

Accordingly, the Appellant's plea of not guilty by reason of insanity did indeed act as a waiver of doctor-patient privilege in respect to all physicians who might testify at trial. The defense of insanity is a complex and troublesome area of the law. It would not serve the administration of justice to permit a defendant so pleading to hamper the gathering of what may be considered the most authoritative evidence of mental capacity, testimony of treating physicians.

## VI.

After opening statements at trial counsel for the Appellant made an oral motion *in limine* to exclude photographs of

the decedent and other physical evidence. This motion was overruled. Objections to a number of these photographs were overruled at trial. Counsel for the Appellant admitted in his opening statement that the Appellant had committed the act upon which his first degree murder charge was based. Because of this admission, it is contended that the challenged photographs and physical evidence were irrelevant. Their probative value could thus not outweigh their prejudicial effect and reversible error results.

When a plea of not guilty by reason of insanity is entered by a defendant, it is the burden of the State to prove sanity beyond a reasonable doubt. *Wilson* v. *State,* (1972) 259 Ind. 375, 287 N.E.2d 875; *Young* v. *State,* (1972) 258 Ind. 246, 280 N.E.2d 595; *Johnson* v. *State,* (1970) 255 Ind. 324, 264 N.E.2d 57. The first-degree charge of this case required that the State prove premeditation on the part of the Appellant. Ind. Code § 35-13-4-1, Burns § 10-3401 (Supp. 1975). How the crime was committed and where it was committed are facts relevant to both overall capacity—sanity, and specific mental state—premeditation. Testimony relating to these matters was proper and photographs supplementing this testimony were competent. *Cooper* v. *State,* (1974) 261 Ind. 659, 309 N.E.2d 807.

"The admission of photographs is a matter within the discretion of the trial court, and we will not reverse absent an abuse of that discretion." *Jewell* v. *State,* (1974) 261 Ind. 665, at 668, 309 N.E.2d 441 at 442. We can find no abuse of that discretion here. Even if we accept the Appellant's relevance argument, he fails to show how these photographs or physical evidence could be considered gruesome or inflammatory. We can find no error here.

The Appellant also finds error in the trial court's restriction of his counsel's final summation to the jury. The testimony of State's witness Dr. Michael L. Minnick established that the Appellant had at one time discussed the ramifications of pleading guilty to a lesser charge, the charge of manslaughter

being used as an example. This was offered as evidence of the Appellant's mental and emotional state. During his summation, counsel for the Appellant stated that the Appellant had been offered a plea of guilty to the charge of manslaughter. The trial court admonished counsel for the Appellant that this was erroneous and was not to be repeated. The jury was admonished to disregard any statement as to any plea offer.

A trial court has discretion in controlling argument before a jury. Absent abuse of this discretion, the ruling of a trial court will not be disturbed. *Owens* v. *State,* (1975) 263 Ind. 487, 333 N.E.2d 745. We find no abuse of discretion here.

Finally, the Appellant finds error in the trial court's refusal to grant defense counsel's motion for pretrial discovery of the grand jury testimony of prosecution witnesses. "[T]he accused does not possess an absolute right to the pretrial examination of Grand Jury minutes." *Blackburn* v. *State,* (1973) 260 Ind. 5 at 12, 291 N.E.2d 686 at 690. Under *Antrobus* v. *State,* (1970) 253 Ind. 420, 254 N.E.2d 873, the Appellant was entitled at trial to secure the grand jury testimony of prosecution witnesses after they testified. The Appellant has failed to show that he was in any way prejudiced by his inability to do this at the earlier time.

Finding no error, we affirm the judgment of the trial court.

Givan, C.J., Hunter, Prentice, JJ., concur; DeBruler, J., concurs in result.

NOTE.—Reported at 338 N.E.2d 275.