**Thabit GAULT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 27A02–0603–CR–224.**

Court of Appeals of Indiana.

Feb. 23, 2007.

Shane E. Beal, Marion, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Thabit Gault appeals his conviction for class A felony possession of cocaine with intent to deliver. We affirm.

### Issues

We restate the issues as follows:

I. Whether sufficient evidence supports Gault's conviction; and

II. Whether the trial court committed reversible error in denying Gault's counsel an opportunity to inspect a police report used to refresh the recollection of a State's witness at trial.

### Facts and Procedural History

On the night of September 16, 2004, Officer Karen Whitted of the Marion Police Department investigated a report of shots fired. Officer Whitted spotted a four-door car matching the description of a vehicle that witnesses to several similar recent incidents had reported seeing in the area. The car was parked in front of Gault's aunt's house. Four men were standing on the driver's side of the car. One man, Gault, was standing near the back door on the passenger's side of the car, which faced the house.

When Officer Whitted exited her police cruiser and walked toward the men, a very defensive and agitated Gault immediately

walked around the rear of the car and approached her. Gault demanded to know why Whitted had approached the group and said, "[W]e're not doing anything." Tr. at 148. Officer Whitted said that she was investigating a report of shots fired in the area. Gault said that he had not heard any shots and that he and his friends were just hanging out at his aunt's house. At no time did Officer Whitted see any person other than Gault between the passenger's side of the car and the house.

Officer Whitted called for backup because the men were moving around, and she was having trouble controlling them. Officer Shawn McGuire responded. He recognized Gault and spoke with him. Officer McGuire confirmed that the car belonged to Gault and asked him if there was anything in the car the officer should know about. Gault responded, "[C]ome on McGuire." Id. at 190. When asked again, Gault gave the same response. This prompted Officer McGuire to approach the car, where he saw, in plain view, a small bag of marijuana. Officer McGuire then arrested Gault for possession of marijuana, performed a patdown search, and placed him in his patrol car. Officer McGuire then returned to Gault's car and searched the area around it. He discovered a bag containing what was later determined to be approximately three grams of crack cocaine on the ground underneath the car's front fender.[1]

Officer McGuire then called other officers to the scene, including members of the drug task force team. Team member Detective Sergeant Mark Stefanatos conducted a further search of the area. Detective Stefanatos found a small plastic grocery bag lying next to the house, near where Gault had been standing when Officer Whitted arrived. He believed the bag to have been placed there very recently because it was very clean and looked out of place. He observed that the bag contained a white, chalky substance that appeared to be powder cocaine. Detective Stefanatos announced, "I found a bag over here." Id. at 274. Officer McGuire returned to his patrol car and searched Gault again. Gault exclaimed, "[T]ell him it's not mine," and "[D]on't let them talk you into putting that shit on me." Id. at 198, 273. He became extremely agitated, and Officer McGuire had to force him back into the patrol car. The grocery bag was later determined to contain a total of 494.77 grams of powder cocaine, packaged in four separate bags, with an estimated street value of $23,000.

On September 21, 2004, the State charged Gault with class A felony possession of cocaine with intent to deliver. On September 22, 2005, a jury found Gault guilty as charged. Gault now appeals.

### Discussion and Decision

#### I. Sufficiency of Evidence

■ To convict Gault of class A felony possession of cocaine with intent to deliver, the State was required to prove that he knowingly or intentionally possessed cocaine in an amount of three grams or more with intent to deliver. Ind.Code § 35–48–4–1(b)(1).[2] Gault contends that the evidence was insufficient to prove that he possessed and intended to deliver the cocaine found in the grocery bag. Our standard of review is well settled:

> controlled substance, whether or not there is an agency relationship; or (2) the organizing or supervising of an activity described in subdivision (1)."

1. No charges were filed based on either the marijuana or the crack cocaine.

2. Indiana Code Section 35–48–1–11 defines "delivery" as "(1) an actual or constructive transfer from one (1) person to another of a

When reviewing a claim of insufficient evidence, we consider only evidence that supports the verdict, and draw all reasonable inferences therefrom. We neither reweigh the evidence nor judge the credibility of witnesses. We uphold a conviction if there is substantial evidence of probative value from which a jury could have found the defendant guilty beyond a reasonable doubt. Circumstantial evidence alone is sufficient to sustain a conviction.

*Bush v. State,* 772 N.E.2d 1020, 1022 (Ind. Ct.App.2002) (citations omitted), *trans. denied.*

■■■ Possession of contraband may be either actual or constructive. *See Gee v. State,* 810 N.E.2d 338, 340 (Ind.2004). Actual possession occurs when a person has direct physical control over the item. *Id.* The parties agree that Gault did not have actual possession of the cocaine. To establish constructive possession, the State must show that the defendant had both the intent and the capability to maintain dominion and control over the contraband. *Id.* Proof of a possessory interest in the premises on which the contraband is found is adequate to show the capability to maintain dominion and control over the item. *Id.* When possession of the premises is non-exclusive, as in this case,

> then the inference of intent to maintain dominion and control over the drugs must be supported by additional circumstances pointing to the defendant's knowledge of the nature of the controlled substances and their presence. The additional circumstances have been shown by various means: (1) incriminating statements made by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant.

*Id.* at 341 (citation and quotation marks omitted).

■■■ The evidence favorable to the jury's verdict established that Gault was the only person who stood between the car and the house during the entire incident. The grocery bag was in plain view and appeared to have been placed against the house very recently. Officer Whitted testified that Gault was very defensive, moved quickly away from the area where the bag was discovered, and kept insisting that he and the other men were innocent of any wrongdoing before they were even asked about their presence or actions. Officer McGuire and Detective Stefanatos testified that Gault was very defensive and that he insisted that the bag was not his before he was told anything about it. Cumulatively, this evidence about Gault's behavior, his statements, and the location of the grocery bag could lead a reasonable trier of fact to conclude that Gault knew about the cocaine and that he had the intent and capability to maintain dominion and control over it. The evidence is sufficient to prove that Gault constructively possessed the cocaine.

■■■ With respect to Gault's intent to deliver the cocaine, we note that "[c]ircumstantial evidence showing possession with intent to deliver may support a conviction. Possessing a large amount of a narcotic substance is circumstantial evidence of intent to deliver. The more narcotics a person possesses, the stronger the inference that he intended to deliver it and not consume it personally." *Davis v. State,* 791 N.E.2d 266, 270 (Ind.Ct.App.2003) (citations and quotation marks omitted), *trans. denied.* "Intent, being a mental state, can only be established by considering the behavior of the relevant actor, the surround-

ing circumstances, and the reasonable inferences to be drawn from them." *Id.*

In *Davis,* we affirmed the defendant's conviction for class A felony possession of cocaine with intent to deliver where he possessed just over five grams of crack cocaine packaged into a number of separate bindles. Gault possessed almost *100 times* that amount of powder cocaine—having a street value of $23,000—separated into four packages. Detective Stefanatos testified that main suppliers of cocaine typically distribute powder cocaine to street dealers, who then convert it into crack cocaine. Tr. at 284–85. The foregoing evidence is sufficient to support an inference that Gault possessed such a large amount of powder cocaine with the intent to deliver.

## II. Opportunity to Inspect Police Report

At trial, defense counsel Shane Beal cross-examined Officer McGuire regarding Gault's arrest. Officer McGuire expressed uncertainty and stated that reading his police report would refresh his recollection. At this point, as the State acknowledges, the prosecutor "apparently supplied" Officer McGuire's police report to either Beal or Officer McGuire. Appellee's Br. at 11. Officer McGuire read a portion of the report and answered Beal's questions. Beal then asked for "a couple minutes" to read the report. Tr. at 205. The prosecutor responded that the police report was "not discoverable evidence[,]" thus apparently invoking the work product privilege. *Id.* Beal said, "If he's used it to testify from, then I'm allowed to have the entire copy to review." *Id.* at 206. The trial court disagreed, stating that the report was "not discoverable." *Id.*

On appeal, Gault contends that Beal should have been permitted to review Officer McGuire's police report pursuant to

Indiana Evidence Rule 612. The rule states in pertinent part,

(a) While Testifying. If, while testifying, a witness uses a writing or object to refresh the witness's memory, *an adverse party* is entitled to have the writing or object produced at the trial, hearing, or deposition in which the witness is testifying.

. . . .

(c) Terms and Conditions of Production and Use. A party entitled to have a writing or object produced under this rule is entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

Ind. Evidence Rule 612 (emphasis added). Gault argues that because Officer McGuire was the State's witness, Gault was the adverse party and therefore was entitled to inspect the police report.

We disagree. In *Thompson v. State,* 728 N.E.2d 155 (Ind.2000), the prosecutor asked Easley, a State's witness, when a conversation with Thompson about the murder weapon had occurred. Easley stated that the conversation occurred in early December. On cross-examination, Thompson asked Easley about a statement that Easley had given to police in early December and handed him a copy of the statement to refresh his recollection. The State then moved to admit the statement. The trial court admitted the entire statement over Thompson's objection. On appeal, our supreme court concluded that "because Thompson handed Easley the statement to refresh his recollection about the timing of the conversation about [the murder weapon], the State was entitled to admit the part of Easley's statement relating to that incident under Rule 612(c)." *Id.* at 162 (citing and quoting 13 Robert Lowell Miller, Jr., *Indiana Practice* § 612.301 at 233 (2d ed. 1995) ("'The

right to introduce the writing or object into evidence belongs solely to the adverse party; the party who refreshed the witness's memory cannot introduce the writing, although the "rule of completeness" may provide a vehicle for introduction of part of the writing by the refreshing party.' ")).[3] In other words, because Thompson refreshed Easley's recollection with the statement on cross-examination, the *State* was the adverse party for purposes of Evidence Rule 612. Likewise here, because Gault refreshed Officer McGuire's recollection with the police report on cross-examination, the State was the adverse party, and therefore Gault was not entitled to inspect the report pursuant to Evidence Rule 612.

▮ The State contends that Gault was not entitled to inspect the police report in any event because it was the prosecutor's work product and was therefore privileged and nondiscoverable. Appellee's Br. at 13 (citing, *inter alia, Goudy v. State,* 689 N.E.2d 686, 695 (Ind.1997)).[4] According to the Indiana Supreme Court, however, a party waives its work product privilege if the privileged material is used to refresh the memory of a witness on the stand. *See Beckham v. State,* 531 N.E.2d 475, 476–77 (Ind.1988) ("The majority of this court has held that, in general, police reports are not discoverable and are considered protected as 'work product' of the prosecutor. However, if the reports are used by the witness on the stand, the 'work product' privilege is waived.") (citations omitted).[5]

The State contends that "[t]his exception does not apply in the present case because [Gault] used the police report to refresh the witness's memory, not the prosecutor." Appellee's Br. at 13. This contention overlooks the fact that the prosecutor allowed the report to be used to refresh Officer McGuire's recollection; as such, we see no reason for drawing a distinction based on which party was examining Officer McGuire.[6] The State cannot use the work product privilege as both a shield and a sword. *See* Miller, § 612.103 at 230 ("[Evidence Rule 612] contains no express exception for an attorney's 'work product' otherwise protected from disclosure, production and inspection, or any express exception for writings otherwise protected by the attorney-client privilege. Accordingly, counsel should exercise considerable caution before employing otherwise privileged writings to refresh a witness's memory while the witness is testifying.") (footnotes omitted).

In view of the State's blanket invocation of the work product privilege as to Officer McGuire's police report, it bears mention-

---

3. The court stated that "[a]lthough the trial court properly admitted the part of the statement used to refresh Easley's memory, it erred in admitting the remainder of the statement over Thompson's objection. Nonetheless, this error ... was harmless." *Thompson,* 728 N.E.2d at 162.

4. *See Goudy,* 689 N.E.2d at 695 ("Unless the privilege has been waived, investigative police reports are not discoverable and are considered protected as the work product of the prosecutor.").

5. Contrary to our colleague's suggestion, we do not believe that Indiana Evidence Rule 612 "conflicts" with *Beckham.* The question on whether a party is entitled to disclosure under Evidence Rule 612 is entirely separate from whether a party is entitled to disclosure under the waiver exception to the work product doctrine. Stated differently, the fact that disclosure is not required under Evidence Rule 612 does not mean that disclosure is prohibited under the waiver exception to the work product doctrine.

6. We also see no reason for drawing a distinction based on the parties' motives for providing and wanting to inspect the report, whatever they might have been.

ing that the work product doctrine was originally developed to protect an attorney's thought processes and legal strategies. In its first application of the doctrine in a civil case, the U.S. Supreme Court observed,

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways-aptly though roughly termed by the Circuit Court of Appeals in this case as the "Work product of the lawyer."

*Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (citation omitted).

In *U.S. v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), the Court applied a more expansive version of the doctrine in a criminal case:

> At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. *It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.*

*Id.* at 238–39, 95 S.Ct. 2160 (emphasis added) (footnote omitted).

In *State ex rel. Keaton v. Circuit Court of Rush County,* 475 N.E.2d 1146 (Ind. 1985), a majority of the Indiana Supreme Court cited *Nobles* for the proposition that "[t]he work product doctrine protects materials prepared by agents for the attorney as well as those prepared by the attorney himself." *Id.* at 1147. The majority went on to say,

> Where, as in the instant case, a timely work product objection has been made, a trial court's authority to control discovery does not extend to compelling production of verbatim copies of police reports. *That is not to say, of course, that factual information contained in such reports, such as the names of witnesses to be called at trial, is not discoverable.* Production of complete police reports, however, would place an undue burden on the prosecuting attorney. The prosecution would be forced to excise nondiscoverable information from copies of reports it has been compelled to produce.

*Id.* at 1148 (emphasis added). Joined by Justice Hunter, Justice DeBruler disagreed with the majority's application of the work product doctrine to police reports, stating that the "doctrine protects the machinations of lawyers and their legal staffs, not law enforcement officers engaged in

their day to day [field] work." *Id.* at 1149 (DeBruler, J., dissenting).[7]

In other cases, the Indiana Supreme Court has held that verbatim witness statements and general summaries of witnesses' expected testimony are not protected by the work product privilege from otherwise proper discovery. *See Hicks v. State,* 544 N.E.2d 500, 503–04 (Ind.1989) (verbatim statements); *Partlow v. State,* 453 N.E.2d 259, 266–67 (Ind.1983) (general summaries), *cert. denied* (1984). The court has also held that State's witnesses' expected testimony regarding each element of each crime charged *was* protected by the work product privilege. *State ex rel. Meyers v. Tippecanoe Superior Ct.,* 438 N.E.2d 989, 991–92 (Ind.1982). As these cases suggest, not all witness statements are created equal. Statements from witnesses at a crime scene are not taken after consultation with an attorney, whereas follow-up statements from those witnesses may reveal the outlines of an attorney's theory of the case.

▮ That said, it is important to remember that it is the attorney's mental processes, not the documents themselves, that the work product doctrine is intended to protect. This subtle yet significant distinction seems to have been lost over time. Although Justices DeBruler and Hunter's views regarding police reports did not carry the day in *Keaton,* perhaps they merit reconsideration because they more closely fulfill the original purpose of the work product doctrine: to protect the fruits of the prosecutor's intellectual labor, rather than the investigative paper trail of the police.[8]

7. As Justice DeBruler's dissent suggests, the Indiana Supreme Court was not bound by the U.S. Supreme Court's formulation of the work product doctrine in *Nobles. See Commonwealth v. Paszko,* 391 Mass. 164, 461 N.E.2d 222, 236–37 (1984) ("The work product doctrine is a creature of public policy, not constitutional compulsion."). In *Paszko,* the Supreme Judicial Court of Massachusetts observed that

> Rule 14 of the Massachusetts Rules of Criminal Procedure preserves the "core" of the work product doctrine by "shelter[ing] the mental processes of the attorney," [*Nobles,* 422 U.S. at 238, 95 S.Ct. 2160], but unlike the Federal doctrine, favors liberal discovery by excluding statements of witnesses other than the defendant and nonlegal reports from the definition of work product.

*Id.* at 237 (footnote omitted). *See* Mass. R.Crim. P. 14(a)(1)(A) ("The prosecution shall disclose to the defense, and permit the defense to discover, inspect and copy, each of the following items and information at or prior to the pretrial conference, provided it is relevant to the case and is in the possession, custody or control of the prosecutor, persons under the prosecutor's direction and control, or persons who have participated in investigating or evaluating the case and either regularly report to the prosecutor's office or have done so in the case: ... (vii) Material and relevant police reports, photographs, tangible objects, all intended exhibits, reports of physical examinations of any person or of scientific tests or experiments, and statements of persons the party intends to call as witnesses."); Mass. R.Crim. P. 14(a)(5) ("This rule does not authorize discovery by a party of those portions of records, reports, correspondence, memoranda, or internal documents of the adverse party which are only the legal research, opinions, theories, or conclusions of the adverse party or its attorney and legal staff, or of statements of a defendant, signed or unsigned, made to the attorney for the defendant or the attorney's legal staff.").

8. Unlike the attorney/client, physician/patient, or priest/penitent privilege, the work product privilege has no vitality or value outside the courtroom. In *Nobles,* the U.S. Supreme Court stated that "the concerns reflected in the work-product doctrine do not disappear once trial has begun. Disclosure of an attorney's efforts at trial, as surely as disclosure during pretrial discovery, could disrupt the orderly development and presentation of his case." 422 U.S. at 239, 95 S.Ct. 2160. One might argue, however, that, with limited exceptions, a prosecutor's work product privilege should expire at the end of litigation. Unlike that of a civil litigator, the strategy of a

In this case, established precedent leads us to conclude that the State waived its work product privilege, at least with respect to the portion of the police report that Officer McGuire used to refresh his memory. Thus, the trial court should have permitted Gault's counsel to review it. Nevertheless, Gault's bald assertion of prejudice is insufficient to establish reversible error, and the evidence of his guilt is substantial. We therefore affirm his conviction. *See Simmons v. State*, 717 N.E.2d 635, 638 (Ind.Ct.App.1999) (stating that trial court "rulings on evidentiary matters will not be disturbed absent an abuse of discretion resulting in the denial of a fair trial for the defendant."); *see also* Ind. Appellate Rule 66(A) ("No error ... in any ruling ... is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.").[9]

Affirmed.

BAKER, J., concurs.

VAIDIK, J., concurs as to Issue I and concurs in result as to Issue II.

VAIDIK, Judge, concurring as to Issue I, and concurring in result as to Issue II.

I agree with my colleagues that the evidence is sufficient to support Gault's conviction for possession of cocaine with the intent to deliver. I further agree that Gault was not entitled to inspect the police report pursuant to Indiana Rule of Evidence ("IRE") 612 as the State and not Gault was the adverse party for purposes of that rule. That being the case, we should affirm the trial court and move on to the next case.

Instead, the majority continues its analysis and cites *Beckham v. State*, 531 N.E.2d 475, 476–77 (Ind.1988), for the principle that "a party waives its work product privilege if the privileged material is used to refresh the memory of a witness on the stand." Op. at 734. The majority proposes that this rule applies regardless of which party was examining Officer McGuire. In this regard, the majority suggests that an inquiry under IRE 612 is entirely separate from the question of whether a party has waived its work product privilege. I strongly disagree. It is apparent to me that IRE 612 actually embodies the waiver of the work product privilege in the narrow factual scenario presented in this case.

*Beckham* does state, "[I]f the reports are used by the witness on the stand, the 'work product' privilege is waived." 531 N.E.2d at 477. Read in isolation, it would appear that the principle applies regardless of which party is doing the questioning that prompts the use of the privileged material to refresh the witness's memory and therefore conflicts with IRE 612. Placed in its proper context, however, the passage is perfectly consistent with IRE 612. That is, *Beckham* was a case where the prosecuting attorney allowed a police

---

prosecutor is based on investigations funded by the public. Once the prosecutor reveals that strategy through the adversary process, there may be little harm, and perhaps much value, in allowing the public to scrutinize its servants' handiwork.

**9.** Our colleague questions "how we can judge the probable impact of the trial court's refusal to compel disclosure of the police report if we do not know the contents of the report" and states that "[w]e do not know the contents of the police report because whether the report constitutes work product was never at issue before the trial court[.]" Op. at 738–39 (Vaidik, J., concurring in result). We do not know the contents of the report because Gault made no attempt to introduce the report into the record after the trial court ruled that it was "not discoverable."

officer to refer to his police report prior to testifying in order to refresh his memory, and the defendant, *the adverse party*, sought to compel the prosecutor to produce the report for inspection. Though the Indiana Supreme Court held that "if the reports are used by the witness on the stand, the 'work product' privilege is waived," it did so in a context in which the prosecutor was doing the questioning.[10]

Furthermore, in stating, "[I]f the reports are used by the witness on the stand, the 'work product' privilege is waived," the *Beckham* Court cited its earlier opinion in *Summerlin v. State*, 256 Ind. 652, 271 N.E.2d 411 (1971), which, like *Beckham*, was a case in which the prosecutor was doing the questioning that prompted the use of the privileged material by the witness, thereby making the defendant the adverse party. In *Summerlin*, the Court held: "If the memoranda used in the instant case were considered privileged or confidential as 'work product,' this privilege or confidentiality was waived when they were used on the stand." 271 N.E.2d at 414. However, the *Summerlin* Court, in reaching this conclusion, cited with approval the following passage:

> While there is some authority to the contrary, it is also the well-settled rule that *the opposing party or counsel* has the right, on proper demand, to inspect and use for purposes of cross-examination any paper or memorandum which is used by a witness while on the stand for the purpose of refreshing his memory upon the matters as to which he is testifying, and which in fact does tend to refresh his memory.

*Id.* at 413 (quoting 125 A.L.R. 19, 194–95 (1940)) (emphasis added). The "opposing party or counsel" language in *Summerlin*

is equivalent to the "adverse party" language found in IRE 612. In reaching a different conclusion under *Beckham* (and, by extension, *Summerlin*) than it does under IRE 612, the majority is mistaken.

Even assuming, *arguendo*, that the majority is correct that *Beckham* conflicts with IRE 612 (which, for the reasons stated above, it does not), I would still hold that disclosure of the police report is not required in this case. When an Indiana Rule of Evidence conflicts with the common law on a specific issue, the Rule of Evidence controls. *See* Ind. Evidence Rule 101(a). Here, IRE 612, labeled "Writing or Object Used to Refresh Memory," addresses the issue of when a party is required to disclose material used to refresh the memory of the witness. The rule clearly requires disclosure to the *adverse* party. Because IRE 612 controls and because Gault was not the adverse party for purposes of this rule, Gault was not entitled to receive the police report.

If the majority's interpretation of *Beckham* became the law, it would not only conflict with IRE 612, but the "adverse party" limitation written into IRE 612(a) would be completely eviscerated. That is, whereas IRE 612(a) allows a defendant to obtain a police report from the prosecutor only if the *prosecutor* prompted the use of the report (because the defendant would be the "adverse party"), the majority would read *Beckham* to allow a defendant to obtain a police report *regardless* of who asked the question that prompted the use of the police report to refresh the memory of a witness. IRE 612(a) would be rendered toothless, and a defendant could compel the disclosure of any writing or object he pleased simply by asking questions that require the witness to refresh

10. In the end, the *Beckham* Court held that the defendant, even as the adverse party, was not entitled to production of the police report

for inspection because the officer referred to the report *prior to testifying*, not while he was "on the stand." 531 N.E.2d at 477.

his memory by reference to a writing or object that is the work product of the prosecutor, even if the questions are immaterial and meant only to open the door to the privileged item.

Having concluded, wrongly, in my opinion, that the trial court erred in refusing to allow Gault to review the police report, the majority nonetheless determines that the evidence of his guilt is substantial and affirms the conviction. In doing so, the majority cites Indiana Appellate Rule 66(A) ("No error ... in any ruling ... is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties."). *See* op. at 737. I question how we can judge the probable impact of the trial court's refusal to compel disclosure of the police report if we do not know the contents of the report. We do not know the contents of the police report because whether the report constitutes work product was never at issue before the trial court; both parties assumed that the police report constitutes work product of the prosecutor. The only question before the trial court was whether the prosecutor had waived its work product privilege un-der IRE 612. Consequently, there was no *in camera* review of the document by the trial court, and we do not have a copy of the report in the record before us. Therefore, even if I were to agree that the trial court erred in denying Gault access to the police report, I do not understand how we could determine the probable impact of that error on Gault's conviction without knowing the contents of the report.

This leads me to my greatest concern with the lead opinion. The majority uses this case as a springboard to comment, in dicta, on the work product privilege as it pertains to police reports. I do not share the conviction of my colleagues on this issue. First, I do not see this as a pervasive problem that needs fixing. Second, to the extent that it is a problem, we should deal with it in cases where the issue is squarely presented to us. For these reasons, I concur in result as to issue II.