ATTORNEY FOR APPELLANT
Shane E. Beal
Marion, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana



### In the
### Indiana Supreme Court

No. 27S02-0705-CR-181

THABIT GAULT,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Grant Superior Court No. 2, No. 27D02-0409-FA-132
The Honorable Randall Johnson, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 27A02-0603-CR-224

**January 15, 2008**

**Sullivan, Justice.**

During cross-examination at Thabit Gault's trial on drug charges, the arresting officer refreshed his memory on several points by referring to his police report. Indiana Evidence Rule 612 requires that if a document is used to refresh the witness's memory while testifying, the party whose interests could be harmed by the testimony must have access to the document. Al-

though the trial court erroneously denied Gault's counsel access to the report, the error was sufficiently minor that it did not adversely affect Gault's rights.

## Background

In September 2004, Marion Police Department Officer Karen Whitted was dispatched to investigate a report of shots fired. Spotting a car that she thought matched the description of a car involved in calls about shots fired in the past, Whitted stopped her police car and got out to talk to the five people standing around the car.

While she waited for backup, Whitted asked the people present to identify themselves. Thabit Gault, Ryan McMullen, and the three other men did so. Of the five men, Whitted observed only Gault as being between the passenger side of the car and the house next to it.

Officer Shawn McGuire was the next police officer to arrive on the scene. McGuire had a brief conversation with Gault and determined that the car was a rental that belonged to Gault. On the floor of the driver's side, in plain view, McGuire saw a cellophane package that contained what looked like marijuana. McGuire placed Gault under arrest. McGuire continued to walk around the rental car, and found a baggie of what looked like crack cocaine near one of the front tires of the car.

Other officers were called to and arrived on the scene, including Detective Sergeant Mark Stefanatos, who was also a member of a drug task force. Stefanatos arrived at the scene after McGuire had found the baggie of crack cocaine. As Stefanatos further examined the area around the car, he noticed a white plastic bag on the ground between the house and the passenger side of the car, a few feet from where Gault was first standing. The bag was "clean . . . [and] fresh, like it had just been placed there." (Tr. at 264.) The bag was later found to contain slightly less than half a kilogram (494.77 grams) of powder cocaine.

The State charged Gault with class A felony possession of cocaine with intent to deliver. In September 2005, a jury found Gault guilty. On appeal, Gault raised two claims: first, that the

State had presented insufficient evidence to convict him, and second, that his counsel should have been permitted to review a police report McGuire used to refresh his recollection while testifying at trial. The Court of Appeals found both arguments unavailing and affirmed Gault's conviction. Gault v. State, 861 N.E.2d 728 (Ind. Ct. App. 2007). Gault then sought, and we granted, transfer. Gault v. State, 869 N.E.2d 457 (Ind. 2007) (table). We address Gault's second claim.

## Discussion

## I

Before Gault's trial, Police Officer Shawn McGuire studied his police report to refresh his memory concerning the events surrounding Gault's arrest. At trial — while defense counsel was cross-examining McGuire — McGuire said that having the opportunity to review his police report again would refresh his recollection. The State's prosecutor handed the report to defense counsel, who handed it to McGuire. But when defense counsel himself asked to review the report, the State objected that the report was not discoverable evidence. The trial court agreed with the State, and did not allow defense counsel to review the report.

An adverse party's review of a writing used to refresh recollection during testimony is governed by Ind. Evidence Rule 612. In 1994, this Court adopted the evidence rules now in use in our state courts. Before that, our rules of evidence were found in statutes and case law. We based our new rules largely on the Federal and Uniform Rules of Evidence and our Evid. R. 612 was modeled after Fed. R. Evid. 612:

> Based on FRE 612, the Indiana rule differs only in grammatical form, and its gender-neutral style, rather than in any of the substance found in URE 612. Indiana Rule 612 addresses the same dangers and concerns and, likewise, includes the identical safeguards as URE and FRE [6]12.
> . . .
> Indiana Rule 612 is in accord with the basic premise of FRE 612, "to promote the search of credibility and memory."

3

Regional Advisory Committee Commentary, in 13A Robert Lowell Miller, Jr., Indiana Practice 258 (3d ed. 2007) (citation omitted). Indeed, the first part of the federal rule is almost identical to our Evid. R. 612.[1]

Because the similarity between the rules is intentional, and the policy behind them is the same, understanding the federal rule will assist us.

Primarily at issue here is subsection (a) of our Evid. R. 612, which governs writings or objects used to refresh recollection <u>during testimony</u>. As in the federal rule, the Indiana rule states that when a writing has been used to refresh recollection <u>while testifying</u>, the adverse party must have access to it; conversely, writings used to refresh recollection <u>prior to testimony</u> may be given to the adverse party at the court's discretion, if "the interests of justice so require." Indiana Evid. R. 612 reads in full:

> **(a)** **While Testifying.** If, while testifying, a witness uses a writing or object to refresh the witness's memory, an adverse party is entitled to have the writing or object produced at the trial, hearing, or deposition in which the witness is testifying.
>
> **(b)** **Before Testifying.** If, before testifying, a witness uses a writing or object to refresh the witness's memory for the purpose of testifying and the court in its discretion determines that the interests of justice so require, an adverse party is entitled to have the writing or object produced, if practicable, at the trial, hearing, or deposition in which the witness is testifying.
>
> **(c)** **Terms and Conditions of Production and Use.** A party entitled to have a writing or object produced under this rule is entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which

---

[1] The first part of Fed. R. Evid. 612 reads:

> Except as otherwise provided in criminal proceedings by section 3500 of title 18, United States Code, if a witness uses a writing to refresh memory for the purpose of testifying, either—
> (1) while testifying, or
> (1) before testifying, if the court in its discretion determines it is necessary in the interests of justice,
> an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

4

relate to the testimony of the witness. If production of the writing or object at the trial, hearing, or deposition is impracticable, the court may order it made available for inspection. If it is claimed that the writing or object contains matters not related to the subject matter of the testimony, the court shall examine the writing or object in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal. If a writing or object is not produced, made available for inspection, or delivered pursuant to order under this rule, the court shall make any order justice requires, but in criminal cases if the prosecution elects not to comply, the order shall be one striking the testimony or, if the court in its discretion determines that the interests of justice so require, declaring a mistrial.

Here, the trial court denied defense counsel access to the police report at trial, despite the use of the report during McGuire's testimony, and the Court of Appeals affirmed that ruling after considering two justifications for keeping the report from Gault's counsel: (1) that Gault was not the adverse party as intended by Evid. R. 612, and (2) that the report was privileged work product. Gault, 861 N.E.2d at 733-37.

Most important here is the question of which party, Gault or the State, was the "adverse party" for purposes of Evid. R. 612 during the cross-examination of McGuire. The Indiana Evidence Rules do not define "adverse party" for purposes of Evid. R. 612, and the term appears elsewhere only in Evid. R. 106. The trial court did not discuss its definition of adverse party when it ruled initially on the request of Gault's counsel to review the document. The Court of Appeals held that "because Gault refreshed Officer McGuire's recollection with the police report on cross-examination, the State was the adverse party, and therefore Gault was not entitled to inspect the report pursuant to Evidence Rule 612." Gault, 861 N.E.2d at 734. According to the State and the Court of Appeals, because the State handed the document to Gault's counsel, who handed it to McGuire during cross-examination, Gault was the party using the document to refresh McGuire's recollection.

Here the State possessed the document, McGuire had studied it to refresh his recollection prior to trial, and McGuire was originally called by the State as a witness. While in the narrowest of procedural terms, one might say that the State and McGuire were adverse at the moment

5

Gault's counsel handed McGuire the document, we think it clear that in terms of their actual interests, it was Gault and McGuire who were adverse for purposes of Evid. R. 612.

The problem that we have encountered here, where parties and witnesses are "adverse" in procedural terms, but not in terms of their actual interests, is not a new or unanticipated one. In their analysis of the scope of the federal rule, Wright & Gold visit a number of possible scenarios to inform the analysis of "adverse party" they ultimately propose. We present their entire discussion here:

> Assuming the witness uses a writing to refresh memory, Rule 612 recognizes rights to the writing only in "an adverse party." Again, the provision does not define the term and the Evidence Rules provide no general definition, notwithstanding the fact the term is also used in Rule 106. One possible meaning is that an "adverse party" is a party whose interests are adverse to the party who called the witness to testify. This clearly should not be the meaning attributed to "adverse party" under Rule 612 since a witness' memory might be refreshed with a writing on cross-examination, making the party calling the witness the one in need of employing the rule.

28 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6183, at 450 (1993) (footnote omitted).

Wright & Gold's "possible meaning" above comes one logical step before the rule applied by the Court of Appeals. Had such a rule been applied in this case, Gault would have been entitled to any report used at any time to refresh McGuire's recollection during his testimony, because McGuire had been called in the first place by the State. As Wright & Gold point out, the proposed rule fails, because Gault could have provided some other document or item to McGuire on cross-examination to refresh McGuire's recollection — and then refused to show it to the State in turn, on the grounds that McGuire was the State's witness, and therefore the State was not an "adverse party" for purposes of Evid. R. 612(a). Such an outcome would defeat the rule's avowed goal of "promot[ing] the search of credibility and memory" — though McGuire's memory might be refreshed, the State would be prevented from assessing its witness's credibility if it were not permitted to examine the memory aid. Miller, supra, at 258. Because this "possible meaning" fails, Wright & Gold proceed to another possible interpretation.

This time, their "possible meaning" of "adverse party" is the one applied by the Court of Appeals in this case:

> This suggests another possible meaning; "adverse party" could be defined as the party whose general interests in the case are adverse to the general interests of the party who used a writing to refresh memory. There are several problems with this definition. First, the witness may have used a writing to refresh recollection without the prompting of any party. Second, since Rule 614 permits the trial judge to call and interrogate witnesses, the judge presumably can also attempt to refresh the recollection of a witness. This could raise the uncomfortable question of which party should be considered "adverse" to the judge. Third, a party might use a writing to refresh recollection, be surprised by testimony that was unfavorable, and then seek to exercise its right under Rule 607 to impeach its own witness. It would be inconsistent with Rule 607 to construe Rule 612 as suggesting that the party calling the witness is not "entitled" to use the writing to impeach on the grounds the party is not "adverse" to itself.

Wright & Gold, supra, at 451 (footnotes omitted). Wright & Gold identify three principal problems with the approach adopted by the Court of Appeals. In addition, we have the problem presented in this case. A party might, during cross-examination of a witness for the other side, find that the witness's recollection could be refreshed by a document or item in the hands of the other side. Perversely, however, if the witness used the document or item on the stand, the cross-examining party would have no right or ability to know precisely what the witness had seen or read in order to refresh his recollection. Such an outcome, again, does not serve the cross-examining party in its assessment of the witness's credibility or the quality of the witness's memory.

This is not to say that other authorities, besides the Court of Appeals, have not found this interpretation sensible. For example, another commentary writes of Fed. R. Evid. 612: "What the Rule intends, we think, is that any time a witness is shown a writing to refresh recollection while testifying . . . the party opposing whoever showed the memorandum to the witness should be able to see it and to examine the witness concerning it." 3 Stephen A. Saltzburg, Michael M. Martin, & Daniel J. Capra, Federal Rules of Evidence Manual 612.02[8] (9th ed. 2006). These authors advance this interpretation of the rule somewhat tentatively and we find Wright & Gold's criticisms persuasive.

Wright & Gold's final concern does not apply to this case, which is a criminal prosecution, but it bears mentioning for application of the rule generally and provides further explanation as to why the previous two "possible meanings" will not suffice:

> Finally, in a civil case, the various devices for joinder, intervention, interpleader, and the like may pose difficult questions as to which parties should be considered "adverse" to the party that refreshed a witness' memory. In such a case, the interests of parties may be generally adverse but converge on specific issues, and vice versa. Where this occurs, a party generally adverse to the party refreshing memory may be interested, on specific matters, in suggesting testimony, while a party generally aligned with the refreshing party may be interested in exposing those suggestions. A definition of "adverse" based on the general-interest alignment of the parties would then give Rule 612 rights to the party likely to abuse those rights while withholding those rights from the party who needs them.

Wright & Gold, supra, at 451. The purpose of Evid. R. 612 is not to provide, without rhyme or reason, some parties with a weapon. The purpose of allowing a witness to refresh his or her recollection, overall, is "to promote the truth by facilitating testimony that might otherwise be lost" — both by enhancing the witnesses' memories and by allowing counsel to explore the witnesses' credibility. Id. § 6182, at 443. This purpose is not served when some parties can abuse the rule and others may not access it at all. Such concerns have been present since the drafting of the federal rule. Indeed, for just this reason, the phrase "for the purpose of testifying" in Fed. R. Evid. 612 is meant to limit the pre-testimony materials reviewed by witnesses to which an adverse party might have access. See Advisory Committee's Note, id. at 431 ("The purpose of the phrase 'for the purpose of testifying' is to safeguard against using the rule as a pretext for wholesale exploration of an opposing party's files and to insure that access is limited only to those writings which may fairly be said in fact to have an impact upon the testimony of the witness."). Our Evid. R. 612(c) also serves this purpose by allowing a party to request in camera review for relevancy before turning materials over to an adverse party.

For all of these reasons, Wright & Gold suggest an understanding that makes sense of the purpose of Evid. R. 612 overall and accommodates the concerns enumerated above:

> The policy underlying Rule 612 of exposing the danger of suggestion again indicates the appropriate interpretation of that provision. An "adverse party" should be considered one whose interests could be harmed by the testi-

mony that was based on the refreshed memory. Thus, regardless of whether the parties are generally aligned or opposed, standing to invoke rights under Rule 612 should depend upon whether a party has a motive to expose the influence of suggestions contained in the writing.

Id. at 451 (footnote omitted). We agree with Gault that the interpretation of Evid. R. 612 by the trial court and the Court of Appeals wrongly prevented him from examining the report used to refresh McGuire's memory. If a witness uses a document to refresh his or her recollection on the stand, the spirit and text of Evid. R. 612 require that, absent circumstances addressed by Evid. R. 612(c), the parties "whose interests could be harmed by the testimony that was based on the refreshed memory" must have access to the document.

In this case, Gault was the party whose interests could have been harmed by McGuire's testimony based on his refreshed memory. Gault's counsel should have had access to the police report.

**II**

We have previously held that "[w]here . . . a timely work product objection has been made, a trial court's authority to control discovery does not extend to compelling production of verbatim copies of police reports" because such reports are the work product of the prosecuting attorney (having been prepared for the prosecuting attorney by the police officer as the prosecuting attorney's agent). State ex rel. Keaton v. Circuit Court of Rush County, 475 N.E.2d 1146, 1148 (Ind. 1985).

As to whether the police report McGuire reviewed while on the witness stand was privileged under Keaton, we agree with the Court of Appeals that the State waived any privilege it might have had when it failed to object to handing over the report to Gault's counsel (to hand to McGuire) in the first place. See Beckham v. State, 531 N.E.2d 475, 476-77 (Ind. 1988). Therefore, there is no need for us to revisit the majority holding in Keaton at this time.

However, we do emphasize the availability of Evid. R. 612(c), which allows for <u>in camera</u> review of documents, part of whose relevance is disputed, for parties who wish to challenge whether some or all of a piece of evidence must be turned over to another party. We note that at the time of the adoption of Evid. R. 612, the Regional Advisory Committee Commentary addressed a possible (if not inevitable) conflict between materials that qualify as "work product" and refreshing the recollection of witnesses:

> Indiana Trial Rule 26(B)(3) provides that materials which qualify as work product are discoverable only upon a showing that the party seeking discovery has substantial need of the materials in preparation of their case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. When a witness has used such materials to actually refresh their recollection prior to testifying, Rule 612 weights the balance in favor of finding that the "substantial need" exists, because of the policy in favor of effective cross-examination.
>
> When the requirement of this rule to disclose materials used to refresh recollection conflicts with the protections afforded by the attorney-client privilege and the work-product doctrine, the weight of authority holds that Rule 612 prevails.

Regional Advisory Committee Commentary, <u>in</u> Miller, <u>supra</u>, at 259 (citations omitted). As discussed in Part I, <u>supra</u>, the trial court has more discretion to allow parties pre-testimony leeway in preparing witnesses without turning over documents. Evid. R. 612(b). In addition, there is precedent in the federal rule to except government documents in criminal cases. <u>See</u> Fed. R. Evid. 612 ("Except as otherwise provided in criminal proceedings . . . ").

Because, as discussed in Part I, <u>supra</u>, effective cross-examination requires the access of an adverse party to documents and items used by witnesses to refresh their recollection on the stand, parties must be careful when offering or handing over such materials to their own or others' witnesses during testimony. If a witness has used a document to refresh his or her recollection during testimony, the document may not be kept from a party with an adverse interest without careful consideration by a trial court under Evid. R. 612(c). Moreover, the issue of work product used to refresh a witness's recollection reveals the flip side of a concern discussed in Part I, <u>supra</u>. Just as a party must not be permitted to twist the definition of "adverse party" to

gain a strategic advantage over other parties by showing witnesses documents on the stand and then keeping those documents from potentially adversely affected parties by insisting those parties are not technically "adverse" under Evid. R. 612, so also must "adverse" parties not be permitted to abuse Evid. R. 612 as an opportunity to gain access to privileged materials by insisting those materials be shown to refresh the recollection of witnesses, and then in turn be shown to that otherwise not privy adverse party.

## III

Because we have concluded that the trial court erred when it did not allow defense counsel to review the police report, we must assess the effect of that error. "'[A]n error will be found harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.'" Thompson v. State, 728 N.E.2d 155, 161 (Ind. 2000) (quoting Fleener v. State, 656 N.E.2d 1140, 1142 (Ind. 1995)). See also Ind. Trial Rule 61.

The effect of our clarification of Evid. R. 612(a) on the outcome of this particular case is minimal. McGuire looked at his police report to refresh his recollection on two points. First, McGuire looked at the report when he could not remember whether Ryan McMullen told him at the scene that the baggie of marijuana found in the car belonged to McMullen. McGuire's memory on this point is immaterial, because McMullen admitted that the marijuana was his during his testimony at trial, and was arrested shortly afterward.

Second, McGuire could not remember the exact timing of his conversations with Gault, and when Gault had told him that items found by police did not belong to Gault: McGuire knew he had spoken to and arrested Gault after finding marijuana in the car, but could not recall whether he had spoken to Gault in between finding the baggie of crack cocaine under the car and the larger bag of powder cocaine, or after both had been found. Thus, after McGuire had the opportunity to refresh his recollection, he clarified his testimony by stating:

11

It, the question earlier is if I saw, or when I went back to speak with . . . Mr. Gault. By my report it states that I returned to my vehicle, I found the first marijuana, I went to place him in custody, I returned to the vehicle and continued looking, I found the second bag which contained . . . the individual packaged crack cocaine, and then the third, or the other sack of powder cocaine which was found on, by the foundation [of the house], that was located, and then by the report, then I returned to my vehicle and . . . spoke to [Gault] about it.

(Tr. at 205.)

McGuire's version of events is corroborated by Stefanatos. Stefanatos testified that after he found the bag of what looked to him like powder cocaine, McGuire got Gault out of the car, and before McGuire or Stefanatos gave Gault more information than that a bag had been found, Gault told Whitted "don't let them talk you into putting that shit on me." (Tr. at 273.) Stefanatos's testimony is untainted by the evidentiary dispute, and indeed contains more information than McGuire's. (For example, Stefanatos remembered what Gault said to Whitted when Gault was removed from the police car and patted down, while McGuire did not.)[2] No other witness contradicted McGuire's or Stefanatos's account of the order of events.

Under ideal circumstances, we would have the police report in the record, sealed for appellate review, per Evid. R. 612(c). However, we note that defense counsel would have had access only to the portions of the report relevant to McGuire's testimony, and not to the entire report. We also note that defense counsel, when invited to speculate during oral argument before this Court, could think of nothing the report might have revealed that would have assisted Gault's case.

---

[2] One inconsistency in Stefanatos's testimony, which we note but to which we do not ascribe greater importance, is Stefanatos's statement that Gault told Whitted not to "put" the bag of powder cocaine "on" Gault before Stefanatos told anyone what he suspected was in the bag. (Tr. at 273.) While Stefanatos did testify that the contents of the bag were not removed or confirmed to be powder cocaine until the bag was away from the crime scene, Stefanatos also testified that he had earlier told a woman who emerged from the house next to which the crime occurred that "unless the cocaine on the side of the house was hers she needed to go back in her residence." (Tr. at 273.) According to both Stefanatos's and McGuire's testimonies, Gault was in McGuire's police car at the time of this exchange; certainly no one else claimed to have heard it or that Gault could have heard it. Tanya Colyer's testimony suggested that the woman with whom Stefanatos spoke might have been Colyer's mother, Gault's aunt.

## Conclusion

The defendant was an "adverse party" for purposes of Evid. R. 612(a), and his counsel should have been permitted to review, at the least, the relevant portions of the report used to refresh the officer's recollection on the stand.  Such error, however, was harmless and the judgment of the trial court is affirmed.  The opinion of the Court of Appeals is vacated except for that portion disposing of Gault's insufficient evidence claim, which is summarily affirmed.  Ind. Appellate Rule 58(A).

Shepard, C.J., and Dickson, Boehm, and Rucker, JJ., concur.